## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**Syed M. Arif Naqvi,**                                  )
)
    **Plaintiff,**                                        )
)
        **v.**                                            )          **Civil No. 14-cv-01314 (APM)**
)
**Saudi Arabian Airlines, Inc.,**                     )
)
    **Defendant.**                                      )
_____ )


### MEMORANDUM OPINION

### I.    INTRODUCTION

Air travel can be a hassle.  But not every travel inconvenience is a compensable wrong.

Believing otherwise, Plaintiff Syed M. Arif Naqvi brought breach of contract and negligence

claims against Defendant Saudi Arabian Airlines, Inc. ("SAA"), seeking to recover damages

arising from various complications he and his wife encountered before boarding an SAA flight

from Jeddah, Saudi Arabia, to Islamabad, Pakistan.  Having concluded that Plaintiff suffered no

more than travel nuisances, rather than any compensable harms, the court grants SAA's Motion

for Summary Judgment.

### II.    BACKGROUND

On February 13, 2014, Plaintiff Syed M. Arif Naqvi and his wife departed from

Washington Dulles International Airport for a multi-city trip that included a stop-over in Jeddah,

Saudi Arabia.  Pl.'s Cross Mot. for Summ. J., ECF No. 12 [hereinafter Pl.'s Cross Mot.], Stmt. of

Undisputed Material Facts [hereinafter Pl.'s Stmt. of Facts], ¶ 7.  On February 24, 2014, Plaintiff

and his wife were scheduled to depart from King Abdulaziz International Airport in Jeddah, Saudi

Arabia, traveling to Islambad, Pakistan, on board an SAA flight that was scheduled to depart at 5:00 a.m.  Pl.'s Stmt. of Facts ¶ 3; *see also* Pl.'s Cross Mot., Ex. E, at 23.  One day prior, Plaintiff checked into his flight online and received a boarding pass via email from SAA, which indicated that his flight would depart from the airport's South Terminal.  Pl.'s Cross Mot., Ex. E, at 23. Plaintiff did not check the status of his flight between the time he received his boarding pass and his arrival the next morning at the South Terminal.  Def.'s Mot. for Summ. J., ECF No. 11 [hereinafter Def.'s Mot.], Ex. A-1, ECF No. 11-2 [hereinafter Naqvi Depo. Tr.], at 41:20-22, 58:16-59:11.  It was not until he arrived at the South Terminal at 2:00 a.m. that Plaintiff learned from an SAA agent that his flight would depart from the Hajj Terminal, not the South Terminal. Pl.'s Stmt. of Facts ¶ 8.  SAA did not give Plaintiff a reason for the terminal change.  *Id.* ¶ 10.

Because the Hajj Terminal was at least 5 miles away,[1] Plaintiff hailed a taxicab to take him there.  *Id.* ¶ 11.  However, because of construction around the Hajj Terminal, the taxicab driver was unable to take Plaintiff directly to the main entrance; instead, the driver dropped Plaintiff off "several hundred feet" away, requiring him to walk that distance with his luggage.  *Id.* ¶ 12. Plaintiff did not seek assistance loading, unloading or carrying his baggage to the Hajj Terminal. Naqvi Depo. Tr. at 140:3-18.

Notwithstanding the change in terminals, Plaintiff arrived at the lounge near his departure gate approximately fifteen minutes before boarding time.  Pl.'s Stmt. of Facts ¶ 13.  Plaintiff suffers from diabetes and, upon reaching the lounge, began looking for drinking water with which to take his medication.  *Id.* ¶¶ 14, 16.  A "staff" member advised him that no drinking water was available,

---

[1] The parties disagree about the distance between the South Terminal and the Hajj Terminal.  *Compare* Pl.'s Stmt. of Facts, Resp. to Def.'s Stmt. of Facts, ¶ 11 (asserting the distance to be 20 kilometers) *with* Def.'s Mot., Stmt. of Material Facts, ¶ 11 (asserting the distance to be 9 kilometers).  This difference, however, is not a dispute over a material fact that would preclude the court's decision to grant summary judgment.

*id.* ¶ 14; Naqvi Depo. Tr. 144:22-146:22, which forced him to drink water from the bathroom sink,

Pl.'s Stmt. of Facts ¶ 16.  Plaintiff found the bathroom to be "unsanitary and nauseating." *Id.* ¶ 17.

Plaintiff boarded the flight, apparently without incident.  During the flight, Plaintiff began

to experience arm, neck, and leg pain.  *Id.* ¶ 18.  After arriving in Pakistan, he consulted a doctor

who diagnosed Plaintiff with "a case of Brachalgia"—the medical term for arm pain[2]—"left with

possibility of Thoracic outlet syndrome"—a compression or irritation of neck and chest nerves[3]—

"precipitated because of unaccustomed physical activity that he had to endure during handling of

heavy luggage at various airports."  Pl.'s Cross Mot., Ex. I, at 30.  The doctor prescribed pain

medication, rest, and use of a cervical collar.  *Id.*

### B.    Procedural History

After returning to the United States, on July 14, 2014, Plaintiff filed suit against SAA in

the District of Columbia Superior Court, alleging breach of contract and negligence and seeking

$100,000 in damages.  Notice of Removal, ECF No. 1, at 7, ¶ 4.  On August 1, 2014, SAA removed

the case to this court pursuant to 28 U.S.C. § 1441(d).  *Id.* at 1.

## III.   LEGAL STANDARD

Summary judgment may be granted only where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that is

capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248

(1986).  In a motion for summary judgment, "[t]he evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor."  *Id.* at 255 (citation omitted).  The court

---

[2] *See Brachialgia*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/brachialgia (last visited Feb. 12, 2016).
[3] *See Thoracic outlet syndrome*, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/thoracic+outlet+syndrome (last visited Feb. 12, 2016).

does not "weigh the evidence and determine the truth of the matter but . . . determine[s] whether there is a genuine issue for trial." *Id.* at 249.

To prevail on a motion for summary judgment, the moving party must establish that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party must support the assertion that no facts are in dispute by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). On the other hand, "[t]o defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials." *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (citing to *Celotex*, 477 U.S. at 324). The non-moving party must provide affidavits or other evidence setting forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## IV.   DISCUSSION

Before turning to the merits, the court addresses the law applicable to Plaintiff's claims. Defendant urges the court to apply the law of Saudi Arabia, primarily because the alleged injuries occurred in Saudi Arabia and Defendant is a Saudi Arabian citizen. *See* Def.'s Mot., Mem. of P. & A., at 5-8. Plaintiff, on the other hand, argues that the law of Virginia applies because his primary residence is in Virginia and he purchased his airline ticket while in that state. *See* Pl.'s Cross Mot. ¶¶ 20-22. The court need not, however, engage in a choice-of-law analysis, because even under the law more favorable to Plaintiff's claims, *i.e.*, the law of Virginia, Defendant is entitled to summary judgment.

A.      **Plaintiff's Breach of Contract Claim**

Plaintiff's breach of contract claim is not premised on an alleged violation of any express provision of SAA's Conditions of Contract, General Conditions of Carriage, or Tariffs on file with the U.S. Department of Transportation, which constitute the terms and conditions that govern the airline ticket he purchased from SAA.[4]  Instead, Plaintiff contends that SAA "breached the implied term of good faith and dealing."  Pl.'s Cross Mot. ¶ 15.[5]  More specifically, according to Plaintiff, SAA violated that duty by failing to:  (1) notify Plaintiff about the terminal change; (2) provide or arrange transportation to the Hajj Terminal; (3) provide drinking water in the terminal; and (4) ensure the public restrooms in the terminal were clean.  *See id.*

Virginia law recognizes that an implied covenant of good faith and fair dealing exists in every contract.  *See Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (interpreting Virginia law).  To prove a violation, a plaintiff must show a contractual relationship between the parties and a breach of the implied covenant.  *Id.* (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996)).  "[A]lthough the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party."  *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.—Conn.*, 156 F.3d 535, 542 (4th Cir. 1998) (interpreting Virginia law).  "The case law shows two ways in which the duty of good faith and

---

[4] "The ticket and tariff constitute the contract of carriage.  To the extent that there is a conflict, the tariff provisions conclusively determine the rights of the parties.  Tariff provisions are binding on the passenger, even if the passenger does not actually know of the provisions."  8A Am. Jur. 2d Aviation § 69 (footnotes omitted) (citing cases).

[5] In his Complaint, Plaintiff alleged that SAA had breached an implied term that it "provide services with reasonable care and skill."  Notice of Removal, Compl. ¶ 15.  Plaintiff does not cite any case that recognizes such an implied contract term under Virginia law.  And because the court must be "'justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent, or make it speak contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties,'" *Schmidt v. Bartech Grp., Inc.*, No. 1:14-CV-00112 GBL, 2014 WL 10212544, at *7 (E.D. Va. Oct. 5, 2014), *aff'd*, 620 F. App'x 153 (4th Cir. 2015) (quoting *So. Ry. Co. v. Franklin & Pittsylvania R.R. Co.*, 32 S.E. 485, 486 (Va. 1899)), the court will not infer the existence of such an implied term.

fair dealing may be breached:  (1) where a party has a clear contract right, even if its exercise

would be arguably arbitrary, that party is only forbidden from acting dishonestly; (2) but where a

party has discretion in performance, that party cannot act arbitrarily or unfairly." *Stoney Glen,*

*LLC v. Southern Bank & Trust Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013) (citations omitted).

In this case, Plaintiff has failed to demonstrate that Defendant acted dishonestly, arbitrarily

or unfairly.  No term of SAA's Contract of Carriage, General Conditions of Carriage, or Tariffs

conferred upon Plaintiff the right to receive, or imposed upon SAA the obligation to provide,

notification of a terminal change; transportation or transfer of baggage between terminals in the

event of a change; drinking water in the terminal; or clean terminal restrooms. *See generally* Def.'s

Mot., Ex. C, Decl. of Anas H. Bafaqeeh, ECF No. 11-6 [hereinafter Bafaqeeh Decl.], ¶¶ 4-5; Def.'s

Mot., Ex. C-3, ECF No. 11-9; Def.'s Mot., Ex. C-4, ECF No. 11-10.  Nor has Plaintiff offered any

proof that SAA acted dishonestly, arbitrarily or unfairly.   At most, Plaintiff suffered

inconveniences resulting from an unexpected terminal change—a change over which SAA had no

control.  *See* Bafaqeeh Decl. ¶ 6 (stating that SAA "does not have control over the departure and

arrival terminals to which its flights are assigned; rather the Director General of KAIA [the airport]

makes such determinations").   Although Plaintiff was offended by the unsanitary bathroom

conditions, SAA did not control or manage the terminal's facilities.  *Id.* ¶¶ 14-15.  And, while

Plaintiff complains of the lack of drinking water, SAA was under no obligation to provide it.  *Id.*

¶ 13.  Plaintiff therefore has not offered any evidence to support his allegation that SAA breached

its implied duty of good faith and fair dealing.

## B.   Defendant's Negligence Claim

Plaintiff's negligence claim fares no better.  Under Virginia law, the essential elements of

negligence are:  "(1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach

of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999) (interpreting Virginia law).  Virginia courts have recognized the existence of a special relationship between a common carrier and passenger and have stated that there is "an elevated duty of care upon the carrier." *See, e.g.*, *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 434 (Va. 2006), *aff'd on reh'g*, 641 S.E.2d 68 (Va. 2007).  This duty requires a common carrier to "exercise the highest degree of care for the safety of its passengers compatible with the normal prosecution of its business."  *Commonwealth v. United Airlines, Inc.*, 248 S.E.2d 124, 130 (Va. 1978)).  That heightened duty, however, does not apply here, where all of the alleged breaches occurred while Plaintiff was in transit between and within terminals and before he boarded an SAA flight.  *See Jones v. Wash. Metro. Area Transit Auth.*, 378 F. Supp. 2d 718, 722 (E.D. Va. 2005) (observing that Virginia courts have held that the duty to provide the "highest degree of practical care [is] applicable only when the plaintiff could be considered the 'passenger' of the defendant carrier at the moment the injury sued upon was sustained") (citations omitted);  *Cleveland v. Danville Traction & Power Co.*, 18 S.E.2d 913, 915 (Va. 1942) ("[T]he highest degree of care . . . applies only to those means and measures of safety which the passenger of necessity must trust wholly to the carrier.  It is in general applicable only to the period during which the carrier is in a certain sense the bailee of the person of the passenger[.]") (citation omitted) (internal quotation marks omitted).  Therefore, at most, SAA owed Plaintiff a duty of ordinary care.  *See Jones*, 378 F. Supp. 2d at 722 (stating that "courts have generally held that where the less risky and more commonplace aspects of a carrier's business are concerned, the law imposes on carriers . . . a duty of ordinary care").

Here, Plaintiff has offered no authority, or evidence, to establish that SSA's duty of ordinary care included notifying him of a terminal change; transporting him to the newly

designated terminal; making drinking water available in the terminal; or maintaining clean bathroom facilities in the terminal.  *Cf. Jones*, 378 F. Supp. 2d at 722 (observing that "courts in Virginia and in neighboring jurisdictions have consistently held carriers to the standard of '*reasonably* safe and adequate' with regard to 'stations and approaches for [the carriers'] patrons" (quoting *Burr v. Va. Ry. & Power Co.*, 145 S.E. 833, 838 (Va. 1928))).

As to the failure to notify, the court agrees with SAA that terminal and gate changes on the day of departure are commonplace in air travel.  Indeed, airlines as a matter of course warn passengers, as SAA did here, to arrive with ample time—in this case, three hours, Bafaqeeh Decl. ¶ 7—before the scheduled departure in anticipation of such changes.  As for the remaining alleged duties, SAA does not "[a]s a matter of policy and procedure . . . arrange, provide, or pay for passengers' surface transportation on airport grounds, including between terminals[.]"  *Id.* ¶ 12. Nor does it "[a]s a matter of policy and procedure . . . provide beverage service to passengers while they wait at the departure gates in the airport terminal except in certain instances of flight delays." *Id.* ¶ 13.  Thus, Plaintiff cannot rely on SAA's policies to argue that it breached the duty of ordinary care.  And, finally, SAA did not control the restrooms located in the Hajj Terminal and thus was not responsible for their condition.  *Id.* ¶ 14.

Additionally, SAA was not the proximate cause of the only discernable harm that Plaintiff suffered—pain resulting from "unaccustomed physical activity that he had to endure during the handling of heavy luggage at various airports."  Pl.'s Mot., Ex. I, at 30.  Such injury was proximately caused by Plaintiff's decision to carry his own baggage—as opposed to seeking help from a porter or someone else—*see Vincenty v. Eastern Air Lines*, 528 F. Supp. 171, 174 (D.P.R. 1981) (holding that the plaintiff's injury was caused by her own decision to lift a heavy bag), as

well as the construction around the Hajj Terminal, which caused him to be dropped off hundreds of feet away from the entrance.  None of those circumstances are attributable to SAA.

## V.     CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion.  A separate Order accompanies this Memorandum Opinion.


Dated:  February 12, 2015                           Amit P. Mehta
                                                    United States District Judge